**IDAHO POWER COMPANY,**
Plaintiff-Appellant,

v.

**WESTINGHOUSE ELECTRIC
CORPORATION,**
Defendant-Appellee.

No. 77–2752.

United States Court of Appeals,
Ninth Circuit.

May 14, 1979.

Thomas N. Ambrose, Boise, Idaho, for plaintiff-appellant.

R. B. Kading, Jr., Michael E. Johnson, Boise, Idaho, for defendant-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and BRUCE R. THOMPSON, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

We affirm the dismissal by summary judgment of Idaho Power Company's damage suit against Westinghouse Electric. The action alleged that Westinghouse was liable on theories of warranty, negligence, and strict liability for damages caused by a defective voltage regulator which it manufactured and sold to Idaho Power.

On appeal, Idaho Power argues that (1) the district court erred in concluding that limitations of liability in the Westinghouse sales form were part of the contract between the parties, and that (2) even if they were part of the contract, Westinghouse could not disclaim strict liability.

## FACTS

On January 12, 1973, Idaho Power sent an inquiry to Westinghouse asking its price for a three-phase voltage regulator. Westinghouse responded on January 25 with a price quotation which provided that it was subject to the terms and conditions on the back of the form.

The terms limited Westinghouse's liability, providing that it would not be liable "for special, indirect, incidental, or consequential damages," and that its liability, "whether in contract, in tort, under any warranty, or otherwise, . . . shall not exceed the price of the product or part on which such liability is based."

The form also limited the contract by this language:

> The above terms, together with those set forth or referred to on the face of this quotation and such others as may be ac-

---

* Of the District of Nevada.

1. Idaho Power argues further that a contract was formed by either (1) the parties' performance, or (2) Westinghouse's acceptance of its purchase order, which Idaho Power contends

cepted by Westinghouse in writing, constitute the entire agreement for the sale of the product.

Idaho Power responded with a purchase order describing the regulator and referring to Westinghouse's price quotation. Idaho Power's order form provided, "acceptance of this order shall be deemed to constitute an agreement upon the part of the seller to the conditions named hereon and supersedes all previous agreements." Although it contained additional terms regarding shipping charges, it did not limit Westinghouse's liability.

Idaho Power received and installed the regulator in June, 1974. The equipment allegedly failed on July 31, causing a fire which damaged it and other machinery.

Westinghouse repaired the regulator at its expense, but Idaho Power sought $21,-241.52 for other damages on theories of negligence, breach of implied and express warranty, and strict liability in tort. The summary judgment of dismissal was based on the liability limitations in Westinghouse's sales form.

## DISCUSSION

Idaho Power concedes that Westinghouse's price quotation and sales form was an offer. It argues, however, that its purchase order was not an effective acceptance.[1] It contends, alternatively, that if the order constituted acceptance, the liability limitations were not a part of the resulting contract. Finally, it argues that the disclaimer, if a part of the contract, was not an effective defense to its strict liability action.

*Acceptance.*

This issue is controlled by U.C.C. § 2–207(1), Idaho Code § 28–2–207(1), which provides:

was a counteroffer. It concludes that in either case the contract's terms did not limit Westinghouse's liability. Because of our holding on the threshold acceptance issue, we need not reach these additional questions.

28–2–207. Additional terms in acceptance or confirmation.—(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

■ Idaho Power contends first that this provision is inapplicable because its purchase order was not a "seasonable expression of acceptance or a written confirmation." It points to the printed language in its order form, which purported to restrict the agreement to its terms.

Under common law, its purchase order would have failed as an acceptance since it varied from the offer's terms. 1 Williston, The Law of Contracts § 73 (3d ed. 1957). Section 207, however, rejects the "mirror image" rule, and converts a common law counteroffer into an acceptance even though it states additional or different terms. *C. Itoh & Co. (American), Inc. v. Jordan International Co.,* 552 F.2d 1228, 1232–35 (7th Cir. 1977); *Hohenberg Bros. Co. v. Killebrew,* 505 F.2d 643, 645–46 (5th Cir. 1974); *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1168 (6th Cir. 1972); *Steiner v. Mobil Oil Corp.,* 20 Cal.3d 90, 99–100, 141 Cal.Rptr. 157, 163–64, 569 P.2d 751, 757 (1977).

The Official Comments to § 207 state: 2. Under this Article [Chapter] a proposed deal which in commercial understanding has in fact been closed is recognized as a contract. Therefore, any additional matter contained . . . in the writing intended to close the deal . .

falls within subsection (2) and must be regarded as a proposal for an added term . . . .

5A Idaho Code 34 (1967).

Here, Idaho Power's order referred to and accepted the price quoted in Westinghouse's offer. It requested shipment within the time limits specified by Westinghouse. No other correspondence ensued and the regulator was shipped and installed accordingly. In commercial transactions such an order, especially when followed by performance, would normally be understood to have closed the deal between the parties. Consequently, it was a "seasonable expression of acceptance," even though it contained the additional terms.[2]

■ Idaho Power next attempts to invoke the proviso to § 207(1), arguing that, if its purchase order constituted acceptance, it was "expressly made conditional on assent" to additional terms. We disagree.

The proviso has been construed narrowly. The court in *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1168 (6th Cir. 1972), held that it was intended to apply "only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein." It concluded that an acceptance " 'subject to all of the terms and conditions on the face and reverse side hereof, . . . all of which are accepted by the [offeror],' " was not "expressly made conditional on assent" within the meaning of § 207. *Id.* at 1167–68. *See also C. Itoh & Co.,* 552 F.2d at 1234–35.

Idaho Power relies upon similar language to demonstrate that acceptance, if any, was conditional on asset. Its purchase order

---

**2.** *Duval & Company v. Malcom,* 233 Ga. 784, 214 S.E.2d 356 (1975), relied on by Idaho Power, is not to the contrary. There, the sellers gave to the buyer a written offer of an output contract specifying no amount. The sellers' "understanding was that the buyer would execute the proposed contract out of their presence," and they would pick up their copy later the same day. In addition to signing the document, however, the buyer added an "estimate" of goods to be delivered. Upon returning, the sellers vehemently protested to the addition, declaring their belief that no contract existed.

The court in *Duval* held that there was no " 'definite and seasonable expression of acceptance,' " concluding that § 207 was inapplicable. It reasoned that the section was "designed to avoid frustrating the parties' actual intent to agree merely because the wording of their forms is conflicting," noting that "under the evidence adduced . . . no deal had in fact been closed . . . ." *Id.* 214 S.E.2d at 358.

Here, aside from the conflicting forms, there is no evidence to indicate that the parties did not intend to close the deal. *Duval* is clearly distinguishable.

form states: "Acceptance of this order shall be deemed to constitute an agreement to the conditions named hereon and supersedes all previous agreements."

By this language, Idaho Power attempted to alter the terms of the offer. As in *Dorton*, however, the language used does not clearly reveal that Idaho Power was "unwilling to proceed with the transaction unless . . . assured of [Westinghouse's] assent to the additional or different terms." Consequently, the proviso in § 207(1) does not apply.

*The Terms of the Contract.*

■ Idaho Power also contends that even if the purchase order was an effective acceptance under § 207(1), the disclaimer in Westinghouse's form is not part of the contract. It relies on *Southern Idaho Pipe & Steel v. Cal-Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246 (1977), *dismissed,* 434 U.S. 1056, 98 S.Ct. 1225, 55 L.Ed.2d 757 (1978).

In *Southern Idaho Pipe,* the court held that when a contract is formed under § 207 by documents with conflicting terms, those terms cancel out, leaving the court to supply the contested term. It reasoned that under such circumstances the offeror's terms should not be conclusive simply because its document was sent first. *Id.,* 567 P.2d at 1253–55. The court then omitted from the contract terms which provided different delivery dates.

Here, Idaho Power's form did not contest Westinghouse's disclaimer. It merely purported to "supersede all previous agreements." At best, the term conflicted with Westinghouse's integration clause. We conclude that it did not nullify the disclaimer.

Because the disclaimer in the Westinghouse offer was part of the contract, the district court did not err in granting summary judgment of Idaho Power's actions based on negligence or warranty.[3] Idaho Power argues, however, that the disclaimer is not a defense to its strict liability action.

*Disclaimer of Strict Liability.*

■ The Idaho Supreme Court has adopted § 402A of the Restatement (Second) of Torts, dealing with strict liability. *Shields v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1974). Comment *m* of that section suggests that strict liability cannot be disclaimed:

> The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to "buyer" and "seller" in those statutes. . . . The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands.

Restatement (Second) of Torts, § 402A at 356.

On the other hand, the Uniform Commercial Code, Idaho Code §§ 28–1–101 *et seq.,* is tolerant of disclaimers. It provides:

> (a) the agreement may . . . limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts;

Idaho Code § 28–2–719(1)(a).

> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Idaho Code § 28–2–719(3).

When strict liability is disclaimed in a commercial setting, it is unclear whether

---

**3.** Idaho Power does not dispute that the disclaimer, if part of the contract, is an effective defense to its actions in negligence and breach of warranty. *See S. M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1374–76 (9th Cir. 1978).

the U.C.C. or the Restatement governs the outcome. The Idaho Supreme Court has not considered the issue but other courts have consistently held that under these circumstances disclaimers of strict liability are effective. The courts vary in their approach.

In *Kaiser Steel Corp. v. Westinghouse Electric Corp.,* 55 Cal.App.3d 737, 127 Cal. Rptr. 838 (1976), the court upheld the dismissal of a strict liability action when the parties, dealing from positions of relatively equal economic strength, contracted in a commercial setting to limit the defendant's liability. The court went on to hold that in this situation the strict liability cause of action does not apply at all.

In reaching this conclusion, the court in *Kaiser* reasoned that strict liability "is designed to encompass situations in which the principles of sales warranties serve their purpose 'fitfully at best.'" 127 Cal.Rptr. at 844. It concluded that in such commercial settings the U.C.C principles work well and "to apply the tort doctrines of products liability will displace the statutory law rather than bring out its full flavor." *Id.* at 845. *See also Southwest Forest Industries v. Westinghouse Electric Corp.,* 422 F.2d 1013, 1020 (9th Cir. 1970).

In a more limited holding the Third Circuit concluded that § 402A can be waived effectively "between business entities of relatively equal bargaining strength." *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146, 149 (3d Cir. 1974). The court in *Keystone* found that the policy reasons underlying strict liability do not apply as strongly in these circumstances. Therefore the U.C.C. governs. *See*

also *S. M. Wilson & Company v. Smith International, Inc.,* 587 F.2d 1363, 1376 (9th Cir. 1978);[4] *Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239, 245 (5th Cir. 1974).

Here, the parties are two large corporations of relatively equal bargaining strength. The disclaimer provisions were discussed by the parties and clearly limited Westinghouse's tort liability. We need not decide whether Westinghouse was subject to strict liability under 402A, but hold that under these circumstances the disclaimer was an effective defense to Idaho Power's strict liability action.[5]

AFFIRMED.

---

4. In *S. M. Wilson* we stated in dictum:

Where the suit is between a non-performing seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code. . . . To treat such a breach as an accident is to confuse disappointment with disaster. Whether the complaint is cast in terms of strict liability in tort or negligence should make no difference.

587 F.2d at 1376 (citations omitted).

5. For the proposition that strict liability cannot be disclaimed, Idaho Power cites *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (10th Cir. 1974), *Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964), and *Greeno v. Clark Equipment Co.,* 237 F.Supp. 427 (N.D.Ind.1965). These cases are inapposite because they involved either ordinary consumer situations, or limitations which did not clearly disclaim tort liability.