**In re CHEMTOY CORPORATION, an Illinois Corporation, Bankrupt.**

**ALTRA CORPORATION, a Corporation, Plaintiff,**

**v.**

**CHEMTOY CORPORATION, an Illinois Corporation, Defendant.**

**Bankruptcy No. 78 B 5286.**

United States Bankruptcy Court, N. D. Illinois, E. D.

April 15, 1982.

August A. Pilati, of Gesas & Towbin, Chicago, Ill., appeared for the plaintiff Altra Corp.

Morris J. Coff, of Holleb & Coff, Ltd., Chicago, Ill., appeared for the defendant Chemtoy Corp.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

### I

This cause of action involves a complaint by plaintiff Altra Corporation (hereinafter referred to as Altra), seeking to modify the automatic stay granted to defendant Chemtoy Corporation (hereinafter referred to as Chemtoy). The stay in question stems from a Chapter XI plan of reorganization which was confirmed on December 22, 1978. Under Bankruptcy Rule 11–44(b), an automatic stay continues "until the case is closed, dismissed, or converted to bankruptcy or the property subject to the lien is, with the approval of the court, abandoned or transferred."

In its complaint Altra asserts that Altra and Chemtoy formed an agreement whereby Altra was to manufacture a four cavity hot runner injection mold and certain mold parts, which were run off of the mold. Altra claims title to the mold as a result of Chemtoy's default in payment. Moreover, Altra alleges that the terms of its agreement with Chemtoy permit Altra to assert a lien on the mold by reason of the default in payment (and the resulting unpaid balance) on the mold parts. Finally, Altra claims that the stay is causing irreparable damage to Altra's interest in the mold because the mold is a wasting asset. Consequently, Altra requests for the stay to be modified so that Altra may assert its lien on the mold and foreclose or sell any interest of Chemtoy in the mold or mold parts.

Both parties have stipulated to the facts involved. On November 4, 1977, Altra submitted its quotation to Chemtoy for the production of a four cavity hot runner injection mold at the price of $52,800.00 and for the manufacturer of "super bubble blower" mold parts at a specified price per thousand. On November 10, 1977, Chemtoy issued its purchase order to Altra for the production of the mold for the price of $53,600.00 and for the manufacture of the mold parts at a specified price per thousand. No other documents were exchanged between the parties, and no negotiations took place with respect to the printed provisions contained on either side of Altra's quotation or the printed provisions on either side of Chemtoy's purchase order. In fact, on the back side of Chemtoy's purchase order, the buyer was erroneously referred to as Associated Mills, Inc. instead of Chemtoy Corporation. This printing error, however, did not mislead Altra. Altra has performed its part of the agreement by producing the mold and has retained the mold in its possession. Altra has also produced

various mold parts which were manufactured from the mold, and a portion of those mold parts remain in Altra's possession. As of the date it entered into a plan of reorganization, Chemtoy had paid $49,732.00 of the $53,600.00 plus tax due .on the mold, leaving a balance due of $4,136.00. Also as of this date, Chemtoy had made several payments for the mold parts, leaving a balance due for the mold parts of approximately $108,000.00. Finally, although the mold and the mold parts were each listed on both Altra's quotation and Chemtoy's purchase order, the invoicing of, and the payments on, the mold were separate from that of the mold parts.

## II

In order to determine whether the relief requested by Altra is appropriate, this court must first determine (1) whether a contract existed between the parties and (2) if a contract exists, what are the terms of the contract.

The facts in this case present a classic "battle of the forms" problem. The parties exchanged printed forms apparently with the intent to form some sort of agreement, if not a contract. Each party, however, failed to even read, much less understand, the printed terms on the other's form. As a result, the forms exchanged contain conflicting as well as additional terms.

At common law, the terms of the acceptance had to be the mirror image of the offer. An acceptance which contained different or additional terms was considered to be a rejection of the offer and thus became a counter-offer. *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1166 (6th Cir., 1972); Barron & Dunfee, *Two Decades of 2–207: Review, Reflection and Revision*, 24 Clev.St.L.Rev. 171, 176 (1975).

■ However, Section 2–207 of the Uniform Commercial Code was enacted to alter the common law result in a battle of the forms situation. Section 2–207 provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Ill.Rev.Stat.Ch. 26, § 2–207 (1979). In this section, the Code recognizes that the terms of the offer and the acceptance are rarely identical in modern commercial transactions. Accordingly, Section 2–207(1) provides that a contract exists notwithstanding different or additional terms in the acceptance where the offeree's intent to accept the offer is expressed, provided that the offeree's acceptance is not expressly conditional on the offeror's assent to the additional or different terms. *Dorton, supra; Idaho Power Co. v. Westinghouse Electric Corp.*, 596 F.2d 924, 926 (9th Cir., 1979); Benfield, *General Provisions, Sales, Bulk Sales (UCC Annual Survey)*, 36 Bus.Law. 1267, 1274 (1981). Thus, an exchange of forms results in a contract unless (1) the offeror could not reasonably treat the offeree's response as an acceptance or (2) the offeree's acceptance is expressly conditioned on the offeror's assent to the variant terms. *Air Products & Chemical Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 210, 206 N.W.2d 414, 423 (1973); *Section 2–207*

*of the Uniform Commercial Code—New Rules for the "Battle of the Forms,"* 32 U.Pitt.L.Rev. 209, 210 (1971).

Turning to the facts of this case, it must be initially decided whether Altra's quotation constituted an offer. It is generally recognized that a detailed price quotation may constitute an offer. *McCarty v. Verson Allsteel Press Co.,* 89 Ill.App.3d 498, 506–507, 44 Ill.Dec. 570, 577, 411 N.E.2d 936, 942 (1980). Altra's quotation was detailed. Moreover, the quotation was clearly inviting Chemtoy to accept the proposal, as evinced by the front page of the quotation which stated: "WE ARE PLEASED TO SUBMIT THE FOLLOWING QUOTATION BASED ON YOUR ACCEPTANCE WITHIN 30 DAYS OR WE RESERVE THE RIGHT TO RE–QUOTE." Thus, Altra's quotation constituted an offer.

Chemtoy responded to the quotation by issuing a purchase order. The purchase order, which was dated six days after that of Altra's quotation, expressly referred to Altra's quotation. In turn, Altra began production of the mold and the mold parts after receipt of Chemtoy's purchase order. In *Idaho Power Co. v. Westinghouse Electric Corp.,* 596 F.2d 924, 926 (9th Cir. 1979), the court held that the parties to a commercial transaction are normally considered to have closed a deal where a purchase order issued in response to a quotation makes reference to the quotation and where the offeror follows by performing. Similarly, in the case at bar this court finds that the actions of the parties indicate that Chemtoy's purchase order was a "seasonable expression of acceptance," even though it contained variant terms.

Chemtoy, however, asserts that a contract was not formed with Altra through operation of Section 2–207(1) because its purchase order was made expressly conditional upon Altra's assent to the variant terms. Specifically, Chemtoy claims that paragraph 1 on the face of the purchase order and paragraph 13 on the reverse side of the purchase order indicate that its acceptance was conditioned on Altra's assent. Paragraph 1 states:

This Purchase Order and Contract resulting from its acceptance shall be and remain subject to and conditioned upon each and all of the conditions of purchase printed on the face and on the reverse side of this purchase order.

To the same end, paragraph 13 provides:

No agreement or other understanding in any way modifying the conditions of the Contract resulting from the acceptance of this purchase order will be binding upon the Buyer unless made in writing and signed by Buyer's representative.

Courts have construed the proviso to Section 2–207(1) narrowly. In *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1168 (6th Cir. 1972), the court held:

In order to fall within this proviso, it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be *expressly* conditional on the offeror's *assent* to those terms. Viewing the Subsection (1) proviso within the context of the rest of that Subsection and within the policies of Section 2–207 itself, we believe that it was intended to apply only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional terms therein.

*Accord, C. Itoh & Co. (America) v. Jordon International Co.,* 552 F.2d 1228, 1235 (7th Cir. 1977). Since paragraphs 1 and 13 of Chemtoy's purchase order and Chemtoy's actions subsequent to the exchange of form do not indicate that Chemtoy was "unwilling to proceed with the transaction" unless assured that Altra would assent to the variant terms of the purchase order, this court finds that Chemtoy's purchase order was not expressly conditioned on any assent from Altra.

Chemtoy relies on *McCarty v. Verson Allsteel Press Co.,* 89 Ill.App.2d 498, 44 Ill. Dec. 570, 411 N.E.2d 936 (1980), to support its argument that its purchase order was expressly conditional. This reliance, however, is misplaced. First, *McCarty* held that the seller's price quotation did not con-

stitute an offer. *Id.* at 507–08, 44 Ill.Dec. at 577–78, 411 N.E.2d at 942–43. Consequently, the *McCarty* court's discussion of the acceptance of the seller's price quotation is merely dicta. Second, *McCarty* found that the exchange of the printed forms differed so radically that the second form could not constitute an acceptance of the first. *Id.* at 510, 44 Ill.Dec. at 580, 411 N.E.2d at 945. Since in the case at bar this court finds that Chemtoy's purchase order was a seasonable expression of acceptance of Altra's quotation, the *McCarty* decision is factually distinguishable.

 Since this court finds that a contract exists between the parties, terms of the contract must now be deduced. Additional terms contained in the offeree's acceptance, under Section 2–207(2) of the Uniform Commercial Code become part of a contract between merchants unless (1) the offer expressly limits the acceptance to the terms of the offer, (2) the additional terms material alter the contract, or (3) notification of objection to additional terms is given within a reasonable time after notice of them is received. Ill.Rev.Stat. Ch. 26, § 2–207(2) (1979). Terms contained in the acceptance which conflict with the offer cancel out with the court to supply the contested terms. *Idaho Power, supra.* As to the title of the mold, there is no conflict in the terms of the forms exchanged. Paragraph 11 of Altra's quotation states:

> *Title to Molds.* Unless and until buyer shall have fully performed hereunder, title to all molds, toolings and fixtures manufactured or purchased by seller for its performance hereunder shall remain in seller. In the event of default by the buyer, the seller shall have the unrestricted right to use all of the said tooling in the manufacture of the products and to sell or authorize others to sell the same for its own account.

Paragraph 20 of Chemtoy's purchase order provides:

> Tools, molds, dies, jigs, fixtures or any special tooling, when purchased and paid for by [Chemtoy Corporation], shall become and be the property of [Chemtoy Corporation], and shall be kept in good repair by Seller when the same is in its possession.

Consequently, both Altra's quotation and Chemtoy's purchase order agree that title to the mold remains in Altra until Chemtoy has fully performed. Since Chemtoy has not fully performed, Altra has title to the mold.

Altra also possesses title to the mold parts. In this situation, however, neither Altra's quotation nor Chemtoy's purchase order mention the passing of title to the mold parts or their place of delivery. In this type of circumstance, Section 2–401(2) of the Uniform Commercial Code provides that "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Ill.Rev.Stat. Ch. 26, § 2–401(2) (1979). Since Altra has not physically delivered to Chemtoy a portion of the mold parts manufactured, Altra has title to the mold parts which it has retained in its possession.

 As to Altra's purported lien on the mold arising from the unpaid balance on the mold parts, Chemtoy's purchase order fails to address this provision of Altra's quotation. Since an offeree, absent an objection, is bound to the terms of the offer, *NASCO, Inc. v. Dahltron Corp.*, 74 Ill. App.3d 302, 30 Ill.Dec. 242, 392 N.E.2d 1110 (1979) (cancellation clause contained in the offer was binding on offeree where offeree's acceptance did not address the terms for cancellation); Benfield, *General Provisions, Sales Bulk Sales (UCC Annual Survey)*, 36 Bus Law 1267, 1274 (1981), it would appear that Chemtoy is bound by paragraph 18 of Altra's quotation which asserts a lien on the mold due to the unpaid balance on the mold parts. However, to allow Altra to assert this lien on the mold would, in effect, cause a forfeiture of the $49,732.00 paid by Chemtoy for the mold. Since a court of equity abhors a forfeiture, this court will not sanction a forfeiture in this case. Consequently, Altra's purported lien is barred.

Moreover, Altra's attempt to assert a lien on the mold due to the default on the mold parts is inconsistent with the actions of the parties. In the instant case, the actions of the parties indicate an intent to treat the purchase of the mold separate from the purchase of the mold parts. Generally, whether a contract is severable depends on the intent of the parties. This intent is ascertained by the terms and the subject matter of the contract. Thus, a contract is considered severable where one party's performance consists of several distinct and separate items and the price to be paid by the other party is apportioned to each of the items to be performed. *Keeler v. Clifford*, 165 Ill. 544, 46 N.E. 248 (1897); *Keeshin v. Levin*, 31 Ill.App.3d 790, 334 N.E.2d 898 (1975). Here, the mold and the mold parts were invoiced, paid for, accounted for, and delivered separately. In addition, the purchase price of the mold was segregated from and computed differently from that of the mold parts. Accordingly, this court finds that the purchase of the mold is a contract severable from the contract for the purchase of the mold parts.

Although Altra may not assert its purported lien on the mold, Altra, as title holder of the mold, is entitled to a cure of the default on the mold. Accordingly, this court holds that the automatic stay in the instant case is modified so that Altra may sell the mold and apply the sale proceeds against the unpaid balance on the mold, with any proceeds in excess of the amount due on the mold remitted to Chemtoy.

Altra is to furnish a draft order in accordance with this opinion within five days.