[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In this case the plaintiff insurance company has brought an action in subrogation suing for breach of a contract CT Page 2926 between the defendant and the plaintiff's insureds.
The contract involved the sale of a steam turbine/generator set by the defendant to Process Construction Services, Inc. (PCS).
The plaintiff provides various types of insurance for steam turbines and related equipment. The plaintiff provided so-called "delay in start up" insurance coverage to the insureds. The insureds had entered into a so-called turnkey construction agreement whereby Process Construction Services, Inc. agreed to construct a co-generation facility to provide electricity to Hartford Hospital.
The equipment was manufactured by the defendant and delivered and during testing a malfunction occurred. Damage was done to the turbine unit and the plaintiff contends as the result of the equipment's malfunction the start up date of the co-generation facility was delayed.
The insureds allegedly sustained a loss of profits as a result of the delay in starting the co-generation facility and they made an insurance claim against the plaintiff insurance company which paid money on the claim. The plaintiff initiated this subrogation action against the defendant manufacturer to recoup what it paid for its insured's consequential damages.
The defendant has brought a motion for summary judgment. The defendant claims the plaintiff's insureds accepted the defendant's demand that it have no liability for consequential damages. By seeking to recoup what it paid out to its insureds the defendant maintains that the plaintiff in effect seeks to avoid the contract limitations to which its own insured had agreed.
In ruling on a motion for summary judgment the trial court must determine if an issue of fact exists but cannot try that issue if it does exist, McColl v. Pataky, 160 Conn. 457,459 (1971). The moving party must exclude any real doubt as to the existence of any genuine issue of material fact.Dougherty, v. Graham, 161 Conn. 248, 250 (1971). The test is whether the moving party would be entitled to a directed verdict, Batick v. Seymour, 180 Conn. 632 (1982). In deciding such a motion and the issues raised by it the evidence is to CT Page 2927 be viewed in the light most favorable to the non-moving party.Connell v. Connell, 214 Conn. 242 (1990).
The question before the court is whether the contract between the defendant and Process Construction Services, Inc. ("PCS") permit a claim for consequential damages.
The facts regarding contract formation between the defendant and PCS are of course determinative for the resolution of the motion before the court. The parties submitted various affidavits and documents which contain much that is undisputed, at least in factual terms, between the parties. In April of 1986 PCS sent the defendant an inquiry about the firm price bid it would place on a steam turbine/generator. On May 8, 1986, the defendant Murray forwarded a sales proposal. The proposal quoted prices for the work and stated any prices were firm only for orders placed before May 31, 1986. The May 8 proposal stated that "our terms and conditions of sale will apply to this offering" and this included a section on "Guarantees." In that portion of the May 8 proposal it states that if a part of the delivered equipment is found to be defective "then we will repair the defective part or furnish a similar part to replace it. . . . The guarantee specifically set forth above is our only guarantee and is made in lieu of all other warranties whether of merchantability or otherwise whether expressed or implied by law or trade usage and of all other obligations or liabilities on our part and will neither assume for us any other liability in connection with the sale of our apparatus. . . . In no event shall we be liable for any consequential damages or loss of anticipated profits."
It is undisputed that an order was not placed with the defendant within the time limit set forth in the May 8 proposal. Over a year later on April 23, 1987 representatives of the defendant and PCS met in order to negotiate terms for the sale of the equipment referred to in the May 8, 1986 proposal. On April 24, 1987 Mr. Perry of the defendant company sent a letter to Mr. Griffin the president of PCS. The letter contained twenty two issues which the defendant's representative said were discussed at the meeting of April 23, 1987. The letter states that it contains notes of what was discussed at the meeting. It does not mention the May 8, 1986 letter but does state "our standard warranty will apply . . ." The letter acknowledges that the insureds will issue a CT Page 2928 purchase order at some point in the future. The letter at no point states it was being sent in confirmation of a contract.
On April 24, 1987 the insured also sent a letter to the defendant Murray corporation. This letter said the insured PCS intends to issue a purchase order for a steam turbine generator "per the agreements reached in our meeting held April 23, 1987 at our office." Mr. Griffin of PCS also directed Murray to "proceed with any engineering required to meet the delivery date."
On May 6, 1987 Mr. Griffin sent another confirmatory letter to Murray which indicates there was agreement as to purchase price, terms of payment and delivery date. Neither the April 24, 1987 nor the May 6, 1987 Griffin letters make any reference to the May 8, 1986 letter.
On May 19, 1987 PCS sent Murray a "sample copy of our purchase order" and asked Murray specifically to review the draft purchase order and sought the defendant's concurrence on the final form of the purchase order. The sample purchase order does not specifically reference the May 8, 1986 proposal. However, the sample purchase order stated: "General Conditions of PCSI Purchase Order shall apply." Murray apparently obtained a copy of those conditions and condition number 4 stated: "Seller agrees to indemnify and save harmless purchaser from any loss, including consequential damages, resulting from the defective or non-conforming condition of material and equipment."
In its brief of 7/26/94 at page 6 defense counsel says Murray "noted" this language conflicted with the warranty limitations in Murray's May 8, 1986 proposal and thus with the agreements Murray claims were reached during the April 23, 1987 negotiations.
"Noticing the unacceptable proposed term with regard to consequential damages" the telefax messages flew and Murray requested that the offending language be removed from the purchase order. Murray sent the following telefax on June 3:
 "Murray cannot accept liability for consequential damages. Since we do not know all of the aspects of the job, we cannot evaluate the risks involved with accepting liability for consequential damages. CT Page 2929 We request that the last sentence be removed from item 4." (Ex. 7)
In this response by Murray to the sample purchase order no actual reference is made to the May 8, 1986 proposal nor does the language used by Murray directly suggest or indirectly infer that Murray thought a previously arrived at April 23 agreement concerning consequential damages was being abrogated by the "unacceptable" language in the sample purchase order. Also Murray did not request that the provisions which it now asserts are its standard warranty be included in the final purchase order which would have explicitly and affirmatively barred a claim for consequential damages.
After receiving Murray's June 3 telefax, PCS did comply with Murray's request by issuing a purchase order that eliminated the provisions for consequential damages that Murray had objected to in its telefax. This purchase order was issued June 19, 1987.
On October 20, 1987 Murray sent acknowledgments to PCS confirming it wasn't responsible for any consequential damages.
As previously noted the turbine malfunctioned and consequential damages were allegedly incurred by the plaintiff's insureds. The defendant contends the language in the May 6, 1986 proposal excluding consequential damages became a term and condition of the contract between these parties. The plaintiff contends that there are material issues of fact as to whether the contract included the clause specifically excluding the defendant from ever being liable for consequential damages. (Plaintiff's brief 9/8/94, pp. 8-9).
1.
I think that it is important in this case to first refer to the relevant provisions of the Uniform Commercial Code before sorting out and examining the maze of facts, letters, purchase orders and affidavits submitted to the court. For me at least the central question is not necessarily when contract formation took place here. The important question is given that there was a contract made between the parties what does that contract say about the legal obligation of the defendant CT Page 2930 for consequential damages?
The code defines a "contract" to mean "the total legal obligation which results from the parties' agreement asaffected by this title and any other applicable rules of law;" § 42a-1-201 (11). An "agreement means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in sections42a-1-205 and 42a-2-208. Whether an agreement has legalconsequences is determined by the provisions of this title if applicable; otherwise by the law of contracts," § 42a-1-201
(3), (emphasis added).
The underlined language at least for the court has significance because it makes clear that as a guide to parties contemplating contract formation and to courts in interpreting contracts after disputes have arisen, the code has very definite policies and preferences or at least operates under certain assumptions which parties and courts must keep in mind. If a court does not take this approach it will be forced to dive into a maze of facts without a framework within which to make a decision.
Since the issue between the parties concerns responsibility for consequential damage, it is necessary to see what the code says about such damages. Is there a code policy with respect to such damages? Is there a code preference for awarding such damages or at least a code perspective as to the award of such damages?
"Consequential damages" are discussed in two code sections, §§ 42a-2-714 (3) and 42a-2-715 (2). I think it's fair to say that there is a preference in the code that consequential damages be awarded. Section 42a-2-714 (3) says: "In a proper case any incidental and consequential damages under the next section may also be recovered." Comment 4 says: "The incidental and consequential damages referred to in subsection (3), which will usually accompany an action brought under this section are discussed in detail in the comment on the next section." The "next" section, § 42a-2-715 (2), defines "consequential damages." Comment 3 to § 42a-2-715 (2) narrowly circumscribes the limiting effect that the words "in the proper case" used in § 42a-2-714 (3) might be thought to have. In fact the code preference for the award of CT Page 2931 consequential damages in comments 3 and 4 to § 42a-2-715 (2) is made rather explicit. The comments read as follows:
 3. In the absence of excuse under the section on merchant's excuse by failure of presupposed conditions, the seller is liable for consequential damages in all cases where he had reason to know of the buyer's general or particular requirements at the time of contracting. It is not necessary that there be a conscious acceptance of an insurer's liability on the seller's part, nor is his obligation for consequential damages limited to cases in which he fails to use due effort in good faith.
 Particular needs of the buyer must generally be made known to the seller while general needs must rarely be made known to charge the seller with knowledge.
 Any seller who does not wish to take the risk of consequential damages has available the section on contractual limitation of remedy.
 4. The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined an any manner which is reasonable under the circumstances.
The liberal attitude of the code formulators toward consequential damages is underlined by their rejection of the so-called "tacit agreement" test for such damages and their adoption of a foreseeability test. Thus "under the code the seller is liable for consequential damages when he (sic) had reason to know of the buyer's general or particular requirements at the time of contracting, regardless of whether he (sic) consciously assumed the risk of such loss; "UniformCommercial Code, Vol 1, 3 ed, White 2 Summers, Sec. 10-4, page 517.
Consequential damages then are the norm under the code unless "limited or excluded" by agreement of the parties and CT Page 2932 even then such limitation or exclusion won't be recognized if it is considered "unconscionable," Sec. 42a-2-719 (3).
2.
The central question here is whether the defendant took advantage of the right it had under § 42a-2-719 (3) to limit PCS's remedies. Given my view of the place of consequential damages in the code it must appear that PCS clearly understood the defendant's position and elected to buy the defendant's product anyway.
The defendant begins its analysis by observing that there are two ways of looking at the bargain of contracting parties and its contents. Pursuant to § 42a-1-201 (3) one can look at the entire process as it unfolded between the parties by reviewing exchanged letters and documents and actions taken by either side during negotiations between them. Or taking a formal point of view, traditional motions of offer and acceptance become important and a court would try to ascertain the content of the bargain at the time the acceptance occurs, § 42a-2-206.
Frankly, such a bifurcated analysis is not that helpful in a case such as this where the question is whether apart from the time or mode of contract formation a party can be held to a specific legal obligation otherwise operative but which it claims the parties agreed would not be imposed on it. Under § 42a-2-204:
 (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
 (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.
The technicalities or mode of contract formation are not much help in trying to ascertain what the parties' understanding was as to the issue of consequential damages especially where, as is obvious, there is no claim that there was an explicit agreement signed off on by both parties CT Page 2933 containing explicit language that the defendant would not be responsible for consequential damages.
The May 8, 1986 proposal from the defendant did explicitly state that the defendant would not be responsible for consequential damages. But the quoted prices were held open only to May 31, 1986 and discussions between the parties were not resumed until April of 1987, almost a year later. If one compares the May 8, 1986 proposal and Mr. Perry's letter to Griffin of PCS on April 24, 1987 it is clear that numerous matters not contemplated in the May 8 proposal were discussed at the April 23, 1987 meeting. The mere existence of the May 8 letter then cannot provide the court a basis to conclude that even if an agreement was made at the April 23, 1987 meeting it necessarily included an agreement on the defendant's lack of responsibility for consequential damages which is specifically referenced in the May 8 letter.
Moreover, the explicit language in the May 8 letter regarding consequential damages indicates the defendant was quite aware of its rights and knew how to explicitly protect them. In Perry's letter of April 24, the tenth paragraph says: "Our standard warranty will apply which is twelve months after start up not to exceed eighteen months after shipment." That is it. That is all there is on a matter which the defendant now maintains was a matter of crucial importance to the defendant. True, Mr. Perry submitted an affidavit again referring to the fact that the parties agreed at the April 23 meeting that the standard warranties of the defendant would apply. But what exactly are those "standard" warranties? Did the parties understand them to mean the same thing? Are they the "Guarantees" on the attachment to the May 8 proposal? Given the code's position on consequential damages something more than this is required for me to find there is no issue of fact on whether consequential damages were excluded by anything that happened at the April 23 meeting. In light of this discussion it can also be said that Mr. Griffin's deposition testimony that he was not clear whether the defendant's standard warranties would apply and that the warranties would be what we wrote them up to be and that he did not recall whether consequential damages came up directly during the April 23 meeting reflect that there is a genuine issue of material fact on the issue of consequential damages even if an oral agreement was reached for the sale of this machinery on April 23. CT Page 2934
The question as to whether a contract was made between the parties on April 23 is a difficult one. The plaintiff cites Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172,187 (1986) for the proposition that a contact under § 42-2-201 is not created by sending a confirmatory letter such as Perry did to another party irrespective of the agreement. But what then of the Griffin letter of the same date in which he refers to "agreements reached" and perhaps even more importantly tells Murray: "Please proceed with any engineering required to meet the delivery date." But the point is that even if an agreement was reached on April 23 I believe there is an issue of fact as to the understanding of the parties concerning Murray's responsibility for consequential damages.
This is not a case where I can turn to a history of contractual relations between the parties to determine what their understanding was as to consequential damages. Therefore, the case of Standard Structural Steel v. BethlehemSteel Corporation, 597 F. Sup. 164 (D.C. Conn. 1984) is not of much help to the defendant. There the court relied on a long history of contractual relations between the parties in which consequential damages were dealt with in a specific way over a period of years in numerous separate contracts. The court referred to a Mr. Bachta who was an officer of Standard Structural Steel and said: "This oral agreement included Bachta's prior understanding derived from Standard's 62 year course of dealing with Bethlehem that Bethlehem would not sell its products without excluding the implied warranties of merchantability and fitness for a particular purpose. Bachta's admitted efforts to circumvent these exclusions by deliberately not placing a written order . . . . will be given no effect by this Court, id. at pp. 185-186.
Again all of this does not mean a contract was not formed on April 23 nor does it mean that the parties of a later date by agreement or course of conduct could not have resolved this issue as a term of their contract, cf. § 42a-2-204(3), (see comment, fact that some terms are left to be agreed upon not enough in itself mean no contact was formed).
That the plaintiff did not understand that it's "agreement" with the defendant excluded the latter's liability for consequential damages is evidenced by its May 19, 1987 sample purchase order. If the plaintiff on that date is CT Page 2935 already bound into a contract, certainly this "sample purchase order" can be regarded as self-serving. But, I cannot raise an issue of fact and then decide it.
The defendant points to its June 3 telefax after receiving the May 19, 1987 sample purchase order in which it says it could not accept liability for consequential damages. It then gives a reason for this position — we do not know all of the aspects of the job, we cannot evaluate the risks involved with accepting such liability. It then requests the sentence referring to consequential damages be removed. PCS complied by removing items 4 and 7 from the purchase order which it mailed on June 19, 1987.
Indeed the June response to PCS's sample purchase order is as interesting as the sample purchase order itself. The telefax does not refer to the May 8, 1986 proposal or the specific agreements it now alleges it already had excluding its liability for consequential damages. Rather it responds with reasons for its position as if the matter were still open between the parties. An odd posture for a party who maintains exclusion of liability for such damages were of prime concern to it from the moment it sent its first proposal to PCS and PCS knew or should have known of this concern throughout bargaining. An irrefutable observation, certainly not, but again an issue of fact is raised.
But PCS did remove the language found to be unacceptable and that certainly has a bearing on the issue before the court. The specific language in so-called PCS General Condition 4 stated:
 Seller agrees to indemnify and save harmless purchaser from any loss, including consequential damages resulting from the defective or nonconforming condition of material and equipment.
The question really is what if any significance should be attached to the inclusion of this language in the PCS sample purchase order of May 19, the way in which Murray reacted, and the fact that the June 19 purchase order prepared by PCS did not include this language. The first two issues have been discussed. Murray argues that taking "an overview of the contract process" it is clear that both parties understood and agreed that Murray would not be responsible for consequential CT Page 2936 damages. The overview that Murray demands must take place in the context of the code, however.
Murray recognizes in its brief that the reference by PCS to liability for consequential damages in the May 19 sample purchase order does represent a "hint of non-agreement" with PCS on this subject. On such "hints" denial of summary judgment motions are based so Murray is quick to point out that as soon as the offending language was seen it was brought to the attention of PCS. As Murray notes PCS' immediate reaction was to comply with Murray demand to remove this language and a purchase money order was issued on June 19 which did not contain it.
In trying to ascertain the bearing of all this as to the understanding or agreement of the parties on this item of damages, as noted, it must still be analyzed in terms of the language of the code.
Section 42a-2-715 (20 [(2)] says in relevant part that:
 "(2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonable be prevented by cover or otherwise; . . .
The problem I have with the language referring to Murray's responsibility for consequential damages in the May 19 sample purchase order is that it can be read to impose such liability in circumstances not envisaged by the code. It would appear liability can be imposed for such damages even if the seller had no "reason to know" of the particular requirements and needs of the buyer. Section 42a-2-719 (1) (a) does say that the agreement between the parties may provide "for remedies in addition to or in substitution for those provided for in this article. Comment 1 states that "Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." Nothing in the code would have prevented PCS from expanding its right to consequential damages even though this section is more often evoked to limit the buyer's remedies,Uniform Commercial Code, White Summers, Vol. 1, § 12-9, page CT Page 2937 596.
Thus, when PCS in effect removed this language it can claim that in its understanding this merely restored its position to claiming that right to consequential damages already provided for in the code. Interestingly when Murray objected in its June 3 telefax to the PCS language in the sample purchase order it merely set forth what would be the code defense to any claim for consequential damages in explaining its reasons why the PCS language should be removed from the sample purchase order.
In a further effort to present its overview of the contract process and to establish that the facts and circumstances indicate that the parties understood that Murray would not be responsible for consequential damages, the defendant presented the deposition testimony of a Mr. Babka who is the plaintiff's Claims Manager, a summary he wrote, and a letter which contains statements that indicate it was his understanding that Murray would not be liable for consequential damages. I'm not clear on what basis I can find that Babka was an agent authorized to make admissions binding his principal, Wade v. Yale University, 129 Conn. 615, 618
(1943). In any event the deposition testimony of Griffith who actually negotiated for PCS contradicts or differs from that of Mr. Babka.
In a final argument the defendant relies on Sec. 42a-2-207
which provides rules to determine which terms become part of a contract. The defendant's argument really bores down to one sentence in its July 26, 1994 brief at page 19: "As there was a term regarding consequential damages in the offer the issue at hand is whether the plaintiff can utilize § 2-207 to negate it and substitute a new term allowing consequential damages."
Section 42a-2-207 reads as follows:
 Sec. 42a-2-207. Additional terms in acceptance or confirmation. (1) A definite and reasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different CT Page 2938 from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) they materially alter it, or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
 (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.
The defendant states that the statute deals with the situation where a party accepting an offer wishes to include a new term not included in the offer.
The defendant then refers to Sec. 42a-2-714 which provides for consequential damages. It categorizes this code provision as a "gap filler" and reasonably argues that a "gap filler" should not be allowed to remove an explicit contrary term in the offer, see Idaho Power Co. v. WestinghouseElectric Corp., 596 F.2d 924 (1979). It further argues that PCS never included a "new term's on consequential damages in its acceptance. When such a term was "suggested" in the sample purchase order and rejected it was "immediately dropped. The basic argument appears to be that PCS and thus the plaintiff should not be allowed to categorize a gap filler provision of the code or the language used in its sample purchase order which it withdrew to qualify as new or CT Page 2939 additional terms under § 42-2-207 (2).
In any event, even if this were to be permitted, the argument goes these additional "terms" providing for consequential damages cannot be permitted to become part of the contract because these terms are different from those proposed in the initial May 8, 1986 offer by Murray as regards consequential damages. This "offer" expressly excludes consequential damages and materially alters the contract.
The defendant relies heavily on the discussion of Sec.42a-2-207 in White Summers, supra at § 1.3, pp. 28 et seq. A cursory reading of White Summers and the section itself indicates what an unsatisfactory tool it can be. The section was originally designed chiefly to keep what the commentators call a "welsher" in the contract but has been most often used by parties to decide the terms of their contract on the basis of documents and letters exchanged by the parties. As White Summers point out, this section has to be interpreted in such a way so as not to give a contracting party an unfair or unearned advantage because it mailed its forms out first as one example. But this is not a case like Idaho Power Co.,
where the buyer sends out a written acceptance shortly after a written offer was made; almost a year after the May 8, 1986 "offer" the parties sat down and tried to reach an agreement. Letters by both sides were sent almost immediately after those April 23, 1987 discussions. For the reasons previously discussed, I cannot say that even if an agreement was reached on April 23 or April 24 it included as a matter of law the provisions as to consequential damages set forth in the May 8, 1986 letter. The whole argument made by the defendant in this case is that in lock step fashion an offer was made May 8, 1986, it was accepted on April 23, 1987 and thus the terms of that latter agreement explicitly provided that no claim for consequential damages could be made against Murray. I do not accept the defendant's definition of "contract" under the code as to what must be included in its terms at the time of contract formation. I simply believe the code is a more flexible tool for these purposes than the defendant's interpretation of § 42a-2-207 would seem to allow. I think issues of material fact prevent the granting of this motion so I will deny the defendant's motion for summary judgment.
Corradino, J. CT Page 2940