**FLORIDA STEEL CORPORATION, Plaintiff,**

v.

**WHITING CORPORATION, Defendant.**

No. 86–388–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 6, 1988.

R. Dennis Withers, Lori D. Zack, Atlanta, Ga., William T. Stone, Jacksonville, Fla., for plaintiff.

Steve Schulte, Chicago, Ill., Frank W. Hession, Laura Ferrante, Jacksonville, Fla., for defendant.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case is before the Court on the defendant's Motion for Partial Summary Judgment, filed on July 13, 1987. The plaintiff filed a response on August 17, 1987, and upon request of the Court, the parties filed supplemental memoranda on October 22 and 23, 1987.

The plaintiff in this action seeks damages arising from a collapse of an electric furnace which the plaintiff purchased from the defendant for use at its Jacksonville steel mill. According to the Complaint filed on June 11, 1986, the plaintiff suffered damages as a result of the furnace's defective design and manufacture.

In its motion, the defendant contends that partial summary judgment must be entered in accordance with two contract provisions entered into by the parties. According to the defendant, the limitations on liability and remedies agreed to by the parties are enforceable because the parties are commercial entities with approximately equal bargaining power.

In response, the plaintiff argues that contractual disclaimers of liability and remedies are against public policy and invalid in strict liability actions. In the alternative, the plaintiff also argues that a question of fact remains as to the relative bargaining strength of the parties, and that the contractual disclaimers are not sufficiently clear and unequivocal to warrant enforcement in this case.

### I. *Choice of Law*

Before reaching the merits, the Court must first resolve the issue of which

state's substantive law governs this diversity action. It is well established that federal courts presiding over diversity cases must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 144 (1941). In tort actions such as the present case,[1] Florida courts apply the "most significant relationship" test to determine which state's law shall govern the substantive rights and liabilities of the parties. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla.1980). Under this test, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship to the occurrence or the parties, in which case the other state's law applies. Restatement (Second) of Conflicts of Laws § 146 (1971).

In determining whether a state other than the one in which the injury occurred has the "more significant relationship" to the occurrence or parties, Florida courts often refer to the Restatement (Second) of Conflicts of Laws § 145(2) (1971). Section 145(2) sets forth certain factors to be considered in resolving this question:

   (a) the place where the injury occurred;

   (b) the place where the conduct causing the injury occurred;

   (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

   (d) the place where the relationship, if any, between the parties is centered.

A survey of the Florida cases applying the "most significant relationship" test suggests that the law of the state in which the injury occurred will almost always govern the issue in dispute. For example, in *State Farm Mutual Automobile Insurance Co. v. Olsen*, 406 So.2d 1109 (Fla. 1981), the Florida Supreme Court held that in an action arising from a motor vehicle

accident in Illinois, where the plaintiff was a Florida resident suing the defendant insurance company under a policy issued in Florida, the law of Illinois applied. On the other hand, Florida courts do not apply the law of the state where the injury occurred if all parties and several significant events are connected with another state. For example, in *Bishop, supra*, the court held that in a suit arising from an airplane crash in South Carolina, where all relevant parties were Florida residents and where the round trip flight began and was intended to conclude in Florida, the law of Florida applied.

Applying the Restatement factors and considering the relevant case law, the Court finds that no state has a more significant relationship to the parties and events than the state in which the injury occurred. In addition to being the place of injury, Florida is also the place where the contract memorializing the parties' relationship was performed. Thus, two significant factors—the accident itself and the delivery of the product which was the focus of the parties' relationsip—demonstrate the connexity between this case and Florida. No other factor points to a different conclusion. Although Illinois is the state where the conduct causing the injury occurred, this factor is not significant in strict products liability case. In such cases, the focus is on the unreasonable dangerousness of the product, not on the conduct of the defendant. Moreover, the parties are not closely connected to any one state—the defendant is incorporated in Delaware and has its principal place of business in Illinois; the plaintiff is incorporated and has its principal place of business in Florida. The Court will therefore apply the law of the state of Florida in resolving the merits of this dispute.

---

**1.** Although the parties agree that the overall case sounds in tort, the plaintiff argues that the Court must apply contracts conflicts principles in resolving the choice of law issue. The plaintiff fails, however, to provide authority for characterizing the issue before the Court as a question of contract interpretation. In fact, in arguing the merits of this motion, the plaintiff pro-

vides ample support for characterizing the issue as one of strict liability in tort. *See, e.g.,* Plaintiff's Memorandum, filed on October 23, 1987, at 13 ("contract disclaimers and limitations have no affect [sic] upon a strict liability in tort action, even where two commercial entities are involved").

## II. *The Merits*

■ In its motion for partial summary judgment, the defendant asks this Court to enforce certain provisions in the contract between the parties which purportedly limit the defendant's liability and the plaintiff's remedies. The subject contract provisions state:

> **Limitation of Liability:** The Seller's liability on any claim of any kind, including negligence, for any loss or damage arising out of, connected with, or resulting from this contract, or from the performance or breach thereof, or from the design, manufacture, sale, delivery, resale, installation, technical direction of installation, inspection, repair, operation or use of any equipment covered by or furnished under this contract shall in no case exceed the replacement price of the part which gave rise to the claim.
>
> In no event, whether as a result of breach of contract or warranty or alleged negligence, shall the Seller be liable for special or consequential damages including, but not limited to, loss of profits or revenue, loss of use of the equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities or services, downtime costs, or claims of customers of the Purchaser for such damages.

Exhibit A, Motion for Partial Summary Judgment, at 15.

As both parties acknowledge, no court in Florida has addressed the question of enforceability of contractual limitations of liability or remedies in strict products liability actions between commercial entities.[2] In the absence of such guidance, the Court must predict how the Florida Supreme Court would rule if it was faced with the identical issue, and rule accordingly. *See Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981).[3]

An appropriate starting place in making this prognostication is with the Florida Supreme Court's decision in *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976). In *West*, the court held for the first time that a manufacturer may be held liable under the theory of strict liability in tort, as distinct from breach of the implied warranty of merchantability. In reaching this holding, the court surveyed the evolution of Florida's products liability case law from its roots in the contract cause of action for breach of warranty to the eventual acceptance of the theory of strict liability. According to the court, Florida courts dealing with breach of warranty claims were often hesitant to recognize contract-based defenses such as privity in cases where the concerns of contract law were not present. Thus, in cases involving claims of injuries from unsafe products, the courts sometimes departed from contract principles in favor of the more logical approach of strict tort liability. Recognizing a need for a consistent approach to products liability claims, the court in *West* adopted the theory of strict liability as set forth in Restatement (Second) of Torts § 402A. 336 So.2d at 87.

Section 402A, by its very terms, describes a cause of action which is separate and distinct from contract-based theories of recovery such as breach of implied warranty. Under this section, the seller of a unreasonably dangerous product may be held liable to an injured user or consumer "although ... the user or consumer has not bought the product from or entered

---

**2.** If this Court had authority to certify a question to the Florida Supreme Court, this case would certainly be an appropriate one in which to do so.

**3.** As stated by the court in *Pennsylvania Glass Sand,*

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we

should look to such statements as indicia of how the state's highest court might decide. The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators.

652 F.2d 1165, 1167 (3d Cir.1981) (citations omitted).

into any contractual relation with the seller." [4] Comment m to Section 402A further states that a plaintiff's rights under this section are not limited by the provisions of the Uniform Commercial Code, and are "not affected by any disclaimer or other agreement."

Although the Florida Supreme Court in *West* did not expressly adopt the comments to Section 402A, the court's adoption of the principles of strict liability set forth in Section 402A could be construed as signaling the demise of contract-based defenses to strict liability claims. The defendant argues, however, that any rejection of contract-based defenses implicit in Section 402A only applies to actions involving injured consumers. According to the defendant, when the plaintiff, as here, is a large commercial entity with sufficient bargaining strength to contractually allocate risks, the principles of contract law should apply.

In support of this argument, the defendant cites several cases from jurisdictions outside of Florida. One case heavily relied on by the defendant is *Idaho Power Co. v. Westinghouse Electric Corp.*, 596 F.2d 924 (9th Cir.1979). In *Idaho Power*, the court held that under Idaho law, a strict liability action under Section 402A can be waived effectively between two large corporations of relatively equal bargaining strength. The court cited with approval *Kaiser Steel Corp. v. Westinghouse Electric Corp.*, 55 Cal.App.3d 737, 127 Cal.Rptr. 838 (1976), where the court reasoned that strict liability was designed to address situations in which the principles of sales warranties did not adequately serve their purposes, and that in certain commercial settings, the provisions in the Uniform Commercial Code for disclaimers of liability work well. *Kai-*

*ser*, 55 Cal.App.3d 737, 127 Cal.Rptr. at 845 (*cited in Idaho Power*, 596 F.2d at 928).

Another of the cases relied on by the defendant is *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146 (3d Cir.1974). In *Keystone*, the court held that disclaimer language in a sales agreement was effective to waive the plaintiff's rights under Section 402A. According to the court, "[enforcing disclaimers] in a commercial context is not inconsistent with the purposes of § 402A, i.e. protection of the average consumer who is not really in a position to bargain effectively or intelligently." *Id.* at 149.

Briefly summarized, the cases relied on by the defendant stand for the proposition that the policies underlying Section 402A are inapplicable to commercial settings where corporations of relatively equal bargaining strength decide to expressly allocate risks. The cases, however, are not uniform in this regard. Several courts have held that contract principles are inapplicable to strict products liability actions regardless of whether the plaintiff is an individual consumer or large commercial entity. In *Sterner Aero AB v. Page Airmotive, Inc.*, 499 F.2d 709 (10th Cir.1974), for example, the court held that a contractual disclaimer of tort liability was ineffective under Oklahoma law as a defense against the plaintiff airline company's strict liability claim. The court relied on *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974), where the Oklahoma Supreme Court reasoned that traditional concepts of contract law are inapplicable to strict products liability actions in Oklahoma. *Kirkland*, 521 P.2d at 1365 (quoting Comment m to Restatement (Second) of Torts § 402A) (*cited in Sterner*, 499 F.2d at 709). *See also Iowa Electric Light &*

**4.** Section 402A states in its entirety:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Power Co. v. Allis–Chalmers Mfg. Co.*, 360 F.Supp. 25 (S.D.Iowa 1973) (as a matter of Iowa law, plaintiff power company's strict tort liability action was not defeated by contractual disclaimer).

Although Florida courts have not spoken on the subject, this Court finds that the state's highest court would refuse to enforce contractual disclaimers in strict tort liability actions—regardless of the parties' relative bargaining power. The cases cited by the defendant in favor of enforcement of such disclaimers are based on the rationale that large commercial purchasers will be able to protect themselves from getting a "bad bargain", and that only individual consumers need protections against contractual defenses such as disclaimers. *See, e.g., Keystone*, 499 F.2d at 149 (purpose of Section 402A is "protection of the average consumer who is not really in a position to bargain effectively or intelligently"). However, in adopting Section 402A, the Florida Supreme Court in *West* emphasized that much more was at stake than ensuring the consumer the "benefit-of-the-bargain." According to the court, "[t]he manufacturer, by placing on the market a potentially dangerous product for use and consumption and by inducement and promotion encouraging the use of these products, thereby undertakes a certain and special responsibility toward the consuming public who may be injured by it." *West*, 336 So.2d at 87.

The Florida Supreme Court in *West* swept away a long line of breach of implied warranty cases and adopted the new, analytically sounder theory of strict liability in tort to further the policy of promoting safety. By adopting Section 402A, the court implicitly recognized that as a matter of public policy, rather than of contractual understanding, a duty should be placed on manufacturers to "warrant" the safety of their products. *See Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1169 (3d Cir.1981) ("The gist of a products liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury

to his person or his property"). Florida courts subsequent to *West* have recognized this important distinction between tort and contract theories of recovery. In holding that a plaintiff may not recover purely economic losses in a tort action, the court in *Affiliates for Evaluation v. Viasyn Corp.*, 500 So.2d 688 (Fla. 3d DCA 1987), explained the distinction:

> The distinction rests ... on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety *defined in terms of conditions that created unreasonable risks of harm.* He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demand.

*Id.* at 691 (quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 151 (1965) (emphasis supplied).

As the above cases suggest, the manufacturer's duty to refrain from selling unreasonably dangerous products under Section 402A is defined according to an objective standard of public safety, not according to private allocations of risk. This principle is based on the policy of promoting safety which is inherent in both the *West* decision and in Section 402A itself. The defendant has cited no Florida case which would provide authority for deviating from this policy in cases where the parties possess equal bargaining power. The Court will, therefore, deny the defendant's Motion for Partial Summary Judgment.

Accordingly, it is

ORDERED that the Motion for Partial Summary Judgment, filed on July 13, 1987, is denied.