**McGRAW-EDISON COMPANY,**
Appellant,

v.

**NORTHEASTERN RURAL ELECTRIC MEMBERSHIP CORPORATION,**
Appellee.

No. 35S04-9507-CV-800.

Supreme Court of Indiana.

April 22, 1997.

Richard E. Steinbronn, D. Randall Brown, Barnes & Thornburg, Fort Wayne, for Appellant.

Peter L. Obremskey, Parr Richey Obremskey & Morton, Lebanon, Stanley H. Matheny, Matheny, Michael, Hahn & Bailey, Huntington, for Appellee.

**ON PETITION TO TRANSFER**

BOEHM, Justice.

The parties are buyer and seller of a piece of equipment under an agreement that included a limitation of liability among its "Standard Terms and Conditions." This case deals with the ability of such a provision to limit the seller's liability under Indiana's Product Liability Act. We hold that the waiver in this case was ineffective.

In 1978, Northeastern Rural Electric Membership Corp. (Northeastern) purchased electrical power station equipment from McGraw–Edison for approximately $71,000. The quotation that Northeastern accepted stated that it was "subject to the terms and conditions" accompanying the quotation. Among these three pages of printed terms was:

> Limitation of Liability: Seller's liability for any claim of any kind (except "Protection Against Infringement") shall not exceed the purchase price of equipment, or portion thereof, which gives rise to the claim, whether such claim shall be for breach of contract, breach of warranty or negligence, and whether such claim arises out of or results from this contract, or from the design, manufacture, sale, delivery, resale, installation, technical direction of installation, inspection, repair, operation or use of any equipment furnished under this contract. . . .

On January 30, 1982, a fire at the Northeastern substation broke out, resulting in property damage and other losses that Northeastern claims to aggregate in excess of $750,000. There were no personal injuries. Northeastern alleges that the fire was caused by an electrical surge, perhaps lightning, that reached Northeastern's transformer, and that McGraw–Edison's equipment, by reason of a design defect, did not act as a breaker to prevent the surge from reaching the transformer. Northeastern sued McGraw–Edison asserting strict liability pursuant to Indiana's Product Liability Act. IND. CODE § 33–1–1.5 (1993 & Supp.1995). McGraw–Edison moved for partial summary judgment based on its contractual limitation of liability. The trial court denied the motion for summary judgment and the Court of Appeals affirmed, holding the limitation of liability provision unenforceable under Indiana law. *McGraw–Edison Co. v. Northeastern Rural Elec. Membership Corp.*, 347 N.E.2d 355 (Ind.Ct.App.1995).

The issue is whether the disclaimer of liability incorporated in McGraw–Edison's quotation bars Northeastern's claim for strict liability under Indiana's Product Liability Act that has been in place since 1978. That Act, prior to 1995 amendments, applied to claims asserting "strict liability" by a "purchaser," giving rise to "sudden, major dam-

age to property" from a "defective product."[1] Section 2.5 of the Act, added in 1983, defined a defective product as one that "will be unreasonably dangerous to the expected user or consumer, when used in reasonably expectable ways" and is in a condition "not contemplated by reasonable persons among those considered expected users or consumers." Prior to 1983, the term "defective product" was not defined. The statute now explicitly excludes from the definition of defective products those that are incapable of being made safe for their reasonably expected use. Thus, the Act does not purport to deal with all transactions. Rather, it creates strict liability only for a limited group of products and requires a plaintiff to prove several things to trigger that liability.

McGraw–Edison contends that "sophisticated" parties cannot invoke the Indiana Product Liability Act based on well established notions of freedom of contract and on the Uniform Commercial Code, Section 2–719. There is nothing in the record to support the sophistication of Northeastern. As a result, McGraw–Edison's position boils down to the view that the Act is inapplicable to products purchased in commercial transactions. Other states, in the development of their common law, have reached varying conclusions as to the effect in a commercial transaction of a disclaimer such as McGraw–Edison invokes here. *Compare Florida Steel Corp. v. Whiting Corp.*, 677 F.Supp. 1140 (M.D.Fla.1988) (invalid under Florida law) and *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan.App.2d 625, 827 P.2d 1195 (1992) (invalid) *with Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924 (9th Cir.1979) (valid under Idaho law). And some courts have found that strict liability can be waived effectively "between business entities of relatively equal bargaining strength." *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146, 149 (3d Cir.1974). At least at the time Indiana enacted its Product Liability Act, a minority of courts found strict liability to apply only to personal injury claims, not property damage. *Hawkins Constr. Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643, 652–53 (1973), *overruled by National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39, 43–44 (1983).

These are all issues that are fairly debatable, but we are not developing the common law of Indiana in this case. We are interpreting the interplay between the provisions of the Uniform Commercial Code—Sales, IND.CODE § 26–2–2–719, which generally supports the enforceability of limitations of liability in commercial transactions, and the Indiana Product Liability Act, IND.CODE § 33–1–1.5–3, which codified strict liability and makes some of these choices that would otherwise be left to the court. The Act was effective June 1, 1978, before the parties began their exchange that led to the purchase of the product in question. It is clearly based on § 402A of the Restatement of Torts Second. Indiana was among the early jurisdictions to adopt § 402A, at least as Indiana law was predicted by its federal bench. In 1965, Judge Eschbach concluded that the Restatement § 402A was the law of Indiana. In a frequently quoted passage, he stated:

> Where there is implied in law a certain duty to persons not in contract privity, it seems preposterous that the seller should escape that duty by inserting into a noncontractual relationship a contractual disclaimer of which the remote injured person would be unaware. Even as between parties to a contract, where the law would imply in a sale the reasonable fitness of the product for ordinary purposes, it seems unconscionable that the seller should by disclaimers avoid the duty of selling merchantable products or shift the risk of defect unless the total circumstances of the

---

**1.** Section 1 of the Act was amended in 1995 to apply to claims for physical harm "regardless of the substantive legal theory." Prior to the 1995 amendment, the Act applied only to claims based on "strict liability." IND.CODE § 33–1–1.5–1 (1982). Additionally, from 1978 until 1983, Section 3 provided that "the common law of this state with respect to strict liability in tort is codified and restated as...." 1978 Ind. Acts, P.L. 141, § 28, *codified at* IND.CODE § 33–1–1.5–1 (Supp.1978). Section 2(2) and its predecessors have always defined "user or consumer" to include purchaser, and Section 2(2) now defines "physical harm" to include sudden major changes to property, and has always included property damage.

transaction indicate the buyer's awareness of defects or acceptance of risk. *Greeno v. Clark Equip. Co.*, 237 F.Supp. 427, 431 (N.D.Ind.1965). Citing *Greeno*, the Appellate Court explicitly adopted § 402A as the law of Indiana five years later in *Cornette v. Searjeant Metal Prod., Inc.*, 147 Ind.App. 46, 258 N.E.2d 652 (1970), a development we noted with approval in *Ayr–Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 300 N.E.2d 335 (1973).

Against this background the General Assembly enacted the Product Liability Act in 1978. Since that time this court has not had occasion to deal directly with the effect of a disclaimer, an issue explicitly left unresolved in *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1088 (Ind.1993).[2] Among the comments to § 402A at that time, and now, is comment *m.* It observes, among other things: "The consumer's cause of action ... is not affected by any disclaimer or other agreement...." Indiana's Product Liability Act did not restrict its application to "consumers." Rather it has always explicitly permitted any "purchaser" to assert a strict liability claim if the other requirements of the Act are satisfied. Section 2. In addition, the Act has always expressly permitted recovery of property damage and is not limited to personal injuries. Section 3(a). Both of these features suggest that the legislature contemplated the Act's application to commercial transactions as well as consumer products.

We have frequently observed that as a general proposition contracts are to be enforced and we do not deviate from that proposition today. However, where the legislature has spoken on a point, we should not substitute our judgment for that of the General Assembly. Accordingly cases dealing

with limitation of liability clauses that predate the Product Liability Act[3] or that do not deal with products that meet the Act's definition of defective and inherently dangerous products[4] are simply inapposite. It is also true that, with some exceptions, UCC § 2–719 has permitted enforceable limitations on liability.[5] Indeed, some courts have found that strict liability is barred by enforceable disclaimer clauses because the UCC, as a statute, overrides the common law, including the Restatement. *See, e.g., Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal.App.3d 737, 746–48, 127 Cal. Rptr. 838, 844–45 (1976); *see generally* Larry D. Scheafer, Annotation, *Pre-Emption of Strict of Liability in Tort by Provisions of UCC Article 2*, 15 A.L.R.4th 791 (1982). In Indiana, however, the Product Liability Act is both later in time and more specific in subject matter than the UCC. The Product Liability Act imposes "strict liability." It previously identified four, and only four defenses. IND.CODE § 33–1–1.5–4 (1982). There are now only three. IND.CODE § 33–1–1.5–5 (Supp.1995). None of these defenses has ever been that the seller has included a boilerplate limitation of liability in the invoice or other routine (and typically unread) documents. Nowhere does the statute refer to "sophisticated" parties, whatever that may mean. Nor is it limited to "consumers." As a result, a loser in a battle of forms may or may not be sophisticated, but in either event is entitled to the statutory protections.

McGraw–Edison argues that permitting the Product Liability Act to trump its disclaimer leads to the result that no product liability issue can be settled by agreement. We do not agree. The common law adopted by the General Assembly contemplated knowing waivers before or after a claim has

---

**2.** This court referred to the Act as the "Strict Liability Act" in *Rispens* because at that time it specifically applied only to strict product liability claims. The 1995 amendments made clear that the statute applies irrespective of the legal theory relied upon. Reversion to its original denomination as the "Product Liability Act" is not only consistent with historical usage, but reflects the current language of the statute.

**3.** *See, e.g., General Bargain Ctr. v. American Alarm Co.*, 430 N.E.2d 407 (Ind.Ct.App.1982).

**4.** *See, e.g., Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450 (Ind.1982).

**5.** We note that the Uniform Commercial Code itself excludes personal injury damages from contractual limitations of liability. IND.CODE § 26–1–2–719(3) (1993). This represents a legislative recognition predating the Product Liability Act that certain types of limitations would not be honored, notwithstanding principles of freedom of contract.

arisen, as the quoted language from *Greeno* suggests. Even in the absence of a statute, some of the several cases upholding the UCC over common law strict liability in this context involved individually negotiated contracts between truly large and "sophisticated" organizations. They arose in industries in which the amount of money involved in the transaction was very large and the parties did not simply trade printed forms, but rather entered into true negotiation over all the terms and conditions, including the allocation of risks from product defects and the contract explicitly waives strict liability claims. *See, e.g., Delta Air Lines, Inc. v. McDonnell Douglas Corp.,* 503 F.2d 239 (5th Cir.1974). Additionally, there remains an issue as to the precision of language required to effect a waiver. Some courts have suggested that a specific reference to "strict liability" is required before a provision waiving strict liability will be enforced. This reasoning is a corollary of the general proposition that printed form agreements will be construed against their author. *See, e.g., Tyler Enter. of Elwood, Inc. v. Skiver,* 260 Ill.App.3d 742, 199 Ill.Dec. 340, 346–47, 633 N.E.2d 1331, 1337–38 (1994) (declining to decide whether a disclaimer is effective as between commercial entities, but finding the terms of the disclaimer insufficiently specific); *cf. McDermott, Inc. v. Clyde Iron,* 979 F.2d 1068 (5th Cir.1992) (under New York law, a contract specifically waiving "strict liability" claim is enforceable) *rev'd in part on other grounds,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). If a true negotiation over risk allocation occurs, and specific language is used, or proof of knowing assumption of risk is offered, it may be that even a strict liability statute may be waived. But that does not appear in the record here, and we are not faced with that issue today. This record does not establish even a conspicuous and explicit provision barring strict liability claims. At least that much is required to

establish waiver or "acceptance of risk," to use *Greeno*'s term, even by a commercial buyer. What other circumstances can lead to waiver are issues for another day.

To bring its claim within the Act, Northeastern must prove a number of things that may or may not be difficult at trial. Since 1983, the Act has stated that a product is "unreasonably dangerous" only if it creates a risk of "physical harm" (which includes sudden property damage) "to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers." [6] IND.CODE § 33–1–1.5–2 (1993 & Supp.1995). The net of this is that the current version of the statute fairly clearly contemplates imposing upon the purchaser the state of knowledge "ordinary" to the group of persons who normally purchase that product. Under these circumstances, the "sophistication" of the purchaser is built into the statutory scheme. The more "sophisticated" the prototypical purchaser of a general product, the higher is the standard of "ordinary knowledge" that can be expected. The statute nowhere, however, creates a bar beyond which a group of purchasers cannot pass by reason of their status as commercial entities.

There are no doubt significant policy considerations in the debate over the wisdom of our product liability laws. Indeed there is a competing "Uniform Product Liability Act" that would be substantially less favorable to potential claimants.[7] However, these are matters for the legislature to resolve. For now, the Indiana General Assembly has resolved them in favor of strict liability for some products. The General Assembly enacted the Product Liability Act against the background of its judicial patina and commentary as they sat in 1978. As noted above, that climate was hostile to disclaimers.[8] This case involves a 1982 fire that is

---

**6.** This section applies to "user or consumer," but does not repeat "user or" with "consumer" throughout. Given the context, the only sensible reading seems to be that the two are used interchangeably in the section.

**7.** *See* MODEL UNIFORM PRODUCT LIABILITY ACT, 44 Fed.Reg. 62714 (1979).

**8.** Today's result is therefore consistent with the rule of statutory construction that "[a]bsent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law." *Drake v. Mitchell Community Schools,* 649 N.E.2d 1027, 1029–30 (Ind.1995).

the subject of a lawsuit filed in 1984 and continues to pend based on an alleged defect in a product purchased in 1978. The parties have not briefed, and we do not decide what version of the statute governs Northeastern's claims, or whether it makes any difference. Under any of the versions from 1978 to date, we conclude that the legislature has chosen to override the considerations of freedom of contract in the interest of encouraging safety of products and responsibility for products that are defective under the standards imposed by the statute. That is a judgment the legislature can make, and in Indiana our General Assembly has made it.[9] The trial court's denial of McGraw–Edison's motion for partial summary judgment is affirmed.

DICKSON and SELBY, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

SULLIVAN, J., dissents with separate opinion, in which SHEPARD, C.J., concurs.

SHEPARD, Chief Justice, dissenting.

The common law and both the state and federal constitutions have always affirmed that individual citizens have the right to make contracts with each other and with business organizations. I think the suggestions in this case and in some other recent decisions that courts should not enforce the right of contract unless those making the contract are "truly large organizations" or "sophisticated" individuals wrongly depart from the way courts have viewed this part of American liberty—as a freedom that is available to all.

SULLIVAN, Justice, dissenting.

There is much about Justice Boehm's opinion in this important case with which I agree. Most importantly, I think we both agree that, notwithstanding the legislature's enactment of the Products Liability Act, Indiana courts will enforce private agreements between sophisticated business entities that allocate between the entities the economic risk

of products liability, under appropriate circumstances. Where we part company is in our definition of those circumstances. I dissent because I believe Justice Boehm's definition sets the bar for enforceability too high.

I understand the rule of law announced by Justice Boehm's opinion to be as follows: the Products Liability Act mandates that any disclaimer as to products liability with respect to a product covered by the Act will be ineffective unless there has been a "knowing waiver" of the purchaser's rights thereunder.

The majority opinion takes the position, with which I generally agree, that because the legislature has acted in this area, it has made "choices that would otherwise be left to the court." But if so, where is our authority to create the "knowing waiver" exception that is not provided for in the statute? Again I agree with Justice Boehm that that authority comes from the fact that the Products Liability Act, at least as originally adopted, codified the common law principles enunciated in Judge Eschbach's *Greeno* opinion; *to wit,* where seller and buyer are parties to a contract, the Products Liability Act permits the seller to be relieved of products liability when "the total circumstances of the transaction indicate the buyer's awareness of defects or acceptance of risk." *See Greeno v. Clark Equipment Co.,* 237 F.Supp. 427, 431 (N.D.Ind.1965).

Justice Boehm's opinion transforms this "total circumstances" test into a "knowing waiver" test. Justice Boehm would find a knowing waiver only where (i) the underlying transaction was between "truly large and 'sophisticated' organizations," (ii) "the amount of money involved ... was very large," and (iii) "the parties did not simply trade printed forms, but rather entered into true negotiations over all the terms and conditions, including the allocation of risks from product defects and the contract explicitly waives strict liability claims."

Justice Boehm's rule may or may not be a good one but, in any event, I hope two things are clear. First, by virtue of the Products Liability Act's incorporation of the common

---

**9.** The legislature in 1995 made extensive amendments to the Act, but did not add contractual disclaimers to the list of potential defenses, notwithstanding the Court of Appeal decision in this case, filed February 28, 1995.

law which permitted a "total circumstances" exception where seller and buyer are parties to a contract, the courts are authorized to define those circumstances. And, second, Justice Boehm's particular definition of those circumstances is purely a policy choice by this court, not one in any way, shape or form mandated by the legislature.

Without belaboring the analysis, I would not set the bar to the enforceability of a products liability disclaimer nearly so high as does Justice Boehm. There are three general reasons for this.

First, fairly read, *Greeno's* exception for transactions where the "total circumstances ... indicate the buyer's awareness of defects or acceptance of risk," is not limited to only "truly large organizations," to deals where the amount of money involved is "very large," or to contracts where the parties use "printed forms." I would agree that the buyer must be sophisticated for this exception to operate but would not impose many, if any, additional qualifications than that to the plain language of *Greeno*.

Second, the fact remains that section 2–719 of the Uniform Commercial Code, Ind.Code § 26–1–2–719, was not repealed or limited by the language of the Products Liability Act. Here the legislature has expressly provided that, in transactions subject to the U.C.C., the parties may agree to limit the buyer's remedies. I disagree with Justice Boehm that this provision is less specific than the Products Liability Act and think our duty here is to harmonize the two statutes to the extent possible. *See Freeman v. State*, 658 N.E.2d 68, 70 (Ind.1995) (*citing Schrenker v. Clifford*, 270 Ind. 525, 527, 387 N.E.2d 59, 60

(1979)) (where there are two statutes on the same subject, they should be construed together so as to harmonize and give effect to each, if possible, because they are *in pari materia*). Under my approach, the U.C.C. provision would retain much more of its vitality than it would under Justice Boehm's.

Third, in several recent decisions, we have emphasized the very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties. *See Continental Basketball Ass'n v. Ellenstein Enters.*, 669 N.E.2d 134, 139 (Ind.1996); *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind.1995). I believe we should apply that same presumption in deciding when the "total circumstances" exception will apply.[1] Freedom of contract permits a corporate purchaser to exercise its business judgment to forego claims for liability in exchange for a lower price. *See, e.g., Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146, 149 (3d Cir.1974). As a general matter, it should be for the marketplace, and not the courts, to decide whether such business judgments are correct. As the Tenth Circuit said in *Keystone Aeronautics*:

> A social policy aimed at protecting the average consumer by prohibiting blanket immunization of a manufacturer or seller through the use of standardized disclaimers engenders little resistance. But when the setting is changed and the buyer and seller are both business entities, in a position where there may be effective and fair bargaining, the social policy loses its *raison d'etre*.

*Keystone Aeronautics Corp.*, 499 F.2d at 149.[2]

---

**1.** It is also true that cases like *Continental Basketball Ass'n* and *Fresh Cut, Inc.* recognize that there are circumstances under which Indiana courts will refuse to enforce private agreements. *See also Straub v. B.M.T. by Todd*, 645 N.E.2d 597 (Ind.1994). To determine whether an otherwise valid agreement contravenes public policy, we have declared that balancing specific relevant considerations is necessary. *Fresh Cut*, 650 N.E.2d at 1130. Those considerations are: (i) the nature of the subject matter of the agreement; (ii) the strength of the public policy asserted; (iii) the likelihood that refusal to enforce the agreement will further that policy; (iv) how serious the forfeiture suffered by the party attempting to enforce the bargain would be; and (v) the

parties' relative bargaining power and freedom to contract. *Id.* These factors, rather than the big-company, big-money, no-printed-forms elements of Justice Boehm's "knowing waiver" test, would seem to me to be the relevant considerations in deciding whether a products liability disclaimer should be enforced.

**2.** Courts from other jurisdictions have held that enforcing a limitation of liability agreement between two commercial entities against a strict liability claim does not violate the purpose behind products liability laws. *See McDermott, Inc. v. Clyde Iron*, 979 F.2d 1068, 1076 (5th Cir.1992), *reversed in part on other grounds* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148

I would not affirm the trial court's denial of McGraw–Edison's motion for partial summary judgment but instead remand for further consideration in light of the principles set forth above.

SHEPARD, C.J., concurs.

(1994); *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924, 928 (9th Cir.1979); *Lykes Bros. S.S. Co., Inc. v. Waukesha Bearings*, 502 F.Supp. 1163 (E.D.La.1980); *Salt River Project Agr. v. Westinghouse Elec.*, 143 Ariz. 368, 694 P.2d 198, 215 (1984). *Contra In re Jones*, 804 F.2d 1133 (10th Cir.1986); *Florida Steel Corp. v. Whiting Corp.*, 677 F.Supp. 1140 (M.D.Fla.1988); *Westlye v. Look Sports, Inc.*, 17 Cal.App.4th 1715, 22 Cal.Rptr.2d 781 (1993); *Spychalla Farms v. Hopkins Agr. Chemical*, 151 Wis.2d 431, 444 N.W.2d 743 (App.1989).