DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES RANDOLPH HARRELL,**
Appellant,

v.

**BMS PARTNERS, LLC,** d/b/a **BROWARD MOTORSPORTS,**
Appellee.

No. 4D22-121

[November 2, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol Lisa Phillips, Judge; L.T. Case No. CACE 20-013803 (25).

Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather & Littky-Rubin, LLP, West Palm Beach, for appellant.

Jason M. Azzarone, Gregory S. Glasser and Mario Gomez of La Cava Jacobson & Goodis, P.A., Tampa, for appellee.

DAMOORGIAN, J.

Charles Randolph Harrell ("Plaintiff") appeals the trial court's final order dismissing with prejudice his negligence and products liability lawsuit against BMS Partners, LLC, d/b/a Broward Motorsports ("Defendant"). The lawsuit was dismissed based on an exculpatory clause contained in the parties' motorcycle sales contract. On appeal, Plaintiff argues the trial court erred in dismissing his lawsuit for the following reasons: (1) the exculpatory clause is ambiguous and unenforceable for failure to clearly identify what entity Plaintiff is releasing; (2) the issue of whether consideration was paid for the exculpatory clause is outside the four corners of the complaint; and (3) the exculpatory clause's plain language does not apply to the strict products liability claims, and to the extent it does apply to those claims, the clause contravenes public policy. We affirm on the first two issues without further comment. As to the third issue, however, we agree with Plaintiff that the exculpatory clause does not apply to the strict products liability claims and reverse.

In 2018, Plaintiff purchased a Suzuki brand motorcycle from the retailer Defendant. The signed sales contract contained the following relevant exculpatory language:

**3. I, FOR MYSELF, MY HEIRS, EXECUTORS AND ASSIGNS HEREBY**

**A. RELEASE BMS FOR ANY LIABILITY OR RESPONSIBILITY IN ANY WAY FOR PERSONAL INJURY OR DEATH, OR OTHER DAMAGES TO ME INCLUDING PROPERTY DAMAGES, OR MY FAMILY HEIRS, OR ASSIGNS WHICH MAY OCCUR FROM MY OPERATION OR OWNERSHIP OF THE MOTORCYCLE I AM PURCHASING FROM BROWARD MOTORSPORTS WHICH MAY BE DUE OR IN PART TO HAVE BEEN CAUSED BY THE NEGLIGENCE OR GROSS NEGLIGENCE OF BROWARD MOTORSPORTS, ITS AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, OR SUBSEQUENT CORPORATE ENTITIES. THIS INCLUDES BOTH ACTIVE AND PASSIVE NEGLIGENCE, AS WELL AS ANY LIABILITY FOR NEGLIGENT FAILURE TO ADEQUATELY WARN WHICH I MIGHT OTHERWISE HAVE AS A CAUSE OF ACTION OR LAWSUIT AGAINST BROWARD MOTORSPORTS. FINALLY, I HEREBY UNDERSTAND IN MY OWNERSHIP AND OPERATION OF THE MOTORCYCLE THAT I EXPRESSLY ASSUME THE RISK OF ANY DANGER OR RISK OF INJURY OR DEATH WHICH MAY BE ASSOCIATED WITH THE OPERATION OF THE MOTORCYCLE ON STREETS, ROADS, HIGHWAYS, EXPRESSWAYS, OR ANY OTHER PUBLIC OR PRIVATE ROADS.**

**B. INDEMNIFY AND HOLD HARMLESS BROWARD MOTORSPORTS FROM ANY AND ALL SUCH CLAIMS OR CAUSES OF ACTION BY WHOMEVER MADE AND WHEREVER PRESENTED.**

**4. I AM AWARE THAT THIS IS A RELEASE OF LIABILITY AND A CONTRACT BETWEEN MYSELF AND BROWARD MOTORSPORTS AND SIGN IT OF MY OWN FREE WILL.**

Shortly after receiving the motorcycle, Plaintiff was involved in an accident and sustained serious bodily injuries. According to Plaintiff, the front end of the motorcycle began to wobble, thrash, and violently turn as

he was operating it, causing him to lose control of the motorcycle and crash into a motor vehicle. Plaintiff thereafter sued Defendant for its own negligence in assembling, setting up, servicing, repairing, and/or inspecting the motorcycle. Plaintiff also sued Defendant in its capacity as a seller in the stream of commerce for strict products liability and negligent products liability arising out of manufacturing defects, design defects, and the failure to warn of those defects. Specifically, the complaint included three strict products liability counts (counts II, III, and IV) and three negligent products liability counts (counts V, VI, and VII). Plaintiff did not add Suzuki, the motorcycle's manufacturer, as a defendant. Defendant moved to dismiss the complaint based on the exculpatory clause. Plaintiff filed a response opposing dismissal and raised therein much of the same arguments now advanced on appeal. Following a hearing, the trial court granted Defendant's motion and dismissed Plaintiff's entire lawsuit with prejudice based on the exculpatory clause.

On appeal, Plaintiff argues the trial court erred by dismissing the strict products liability counts because the exculpatory clause, by its plain language, only applies to negligence-based claims. Defendant, citing to the "any liability or responsibility in any way" language in paragraph 3.A of the exculpatory clause, counters the use of the all-encompassing words "any" and "in any way" clearly reflect the parties' agreement to relieve Defendant of liability for any potential tort claim, including claims for strict products liability.

"An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury." *Elalouf v. Sch. Bd. of Broward Cnty.*, 311 So. 3d 863, 865 (Fla. 4th DCA 2021) (citation omitted). "Public policy disfavors exculpatory contracts because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss." *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260 (Fla. 2015). "Nevertheless, because of a countervailing policy that favors the enforcement of contracts, as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy." *Id.* "Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away." *Id.* at 260–61. To determine whether such intention was made clear and unequivocal, courts are required to read the release *in pari materia*, giving meaning to each provision. *Fresnedo v. Porky's Gym III, Inc.*, 271 So. 3d 1185, 1186 (Fla. 3d DCA 2019).

3

Here, although the first sentence of paragraph 3.A. states Plaintiff is agreeing to release Defendant for "any liability or responsibility in any way for personal injury or death," the second half of the sentence contains language limiting the scope of the release to claims "which may be due or in part to have been caused by the negligence or gross negligence of Broward Motorsports." Thus, by their own choice of language, the parties agreed the exculpatory clause would only release claims sounding in negligence. *Compare Sanislo*, 157 So. 3d at 259, 271 (because the exculpatory clause included broad and all-encompassing language releasing "any and all claims," the clause was not per se ineffective to bar a negligence action despite the absence of the terms "negligence" or "negligent acts"), *with Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982) (because the exculpatory clause expressly referred to claims of negligence, the clause was limited to claims of negligence only). *See also* 11 *Williston on Contracts* § 32:10 (4th ed.) (recognizing "specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate," and that therefore "it is an accepted principle that general words in a release are limited always to that thing or those things which were specially in the contemplation of the parties at the time when the release was given").

Accordingly, the exculpatory clause in this case undoubtedly applies to the ordinary negligence count (count I) and the negligent products liability counts (counts V, VI, and VII). The clause, however, does not apply to the three strict products liability counts because those counts arguably do not fall within the umbrella of a negligence claim. As recognized by this Court, "Florida tort law provides that the manufacturer of a defective product may be subject to liability under two theories: negligence and strict liability." *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 17 (Fla. 4th DCA 2022) (citation omitted). This is because "[s]trict liability theories are generally distinct from negligence" in that "[s]trict liability is not concerned with the reasonableness of a manufacturer's conduct[;] . . . [instead] the focus is on the product itself and the reasonable expectations of the consumer." *Id.* at 18 (third alteration in original) (citation omitted). Thus, while a strict liability claim is "to some extent a hybrid of traditional strict liability and negligence doctrine," it is nonetheless a claim separate and apart from a negligence claim. *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1169, 1172 (Fla. 4th DCA 1998) (citation omitted) ("[W]e clarify that under Florida law, negligent failure to warn and strict liability failure to warn represent two distinct theories of recovery."); *see also Fuchsgruber v. Custom Accessories, Inc.*, 628 N.W.2d 833, 836 (Wis. 2001) ("Strict liability for injuries caused by defective and unreasonably dangerous products

4

. . . is liability in tort, not liability for negligence."); *Hopfer v. Neenah Foundry Co.*, 477 S.W.3d 116, 118 (Mo. Ct. App. 2015) ("Missouri jurisprudence embraces a clear demarcation between claims of negligence and strict product liability that differentiates the evidence required to prove such claims.").

Moreover, to the extent the exculpatory clause does apply to the strict products liability claims, we conclude that portion of the clause contravenes public policy. "Even waivers that are clear and unambiguous may nevertheless be unenforceable if they contravene Florida public policy." *Merlien v. JM Fam. Enters., Inc.*, 301 So. 3d 1, 6 (Fla. 4th DCA 2020). A contract is void as against public policy if "it is injurious to the interests of the public or contravenes some established interest of society." *Id.* (quoting *Griffin v. ARX Holding Corp.*, 208 So. 3d 164, 170 (Fla. 2d DCA 2016)). "The public policy of a state or nation should be determined by its Constitution, laws, and judicial decisions." *Griffin*, 208 So. 3d at 170 (quoting *Atl. Coast Line R.R. Co. v. Beazley*, 45 So. 761, 786 (Fla. 1907)).

In *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976), the Florida Supreme Court recognized strict products liability as a cause of action and adopted the theory of strict liability as set forth in the Restatement (Second) of Torts § 402A. Section 402A reads as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In articulating the policy reasons for the importance of strict liability, the *West* court explained:

> The cost of injuries or damages, either to persons or property, resulting from defective products, should be borne by the makers of the products who put them into the channels of trade, rather than by the injured or damaged persons who are ordinarily powerless to protect themselves. We therefore hold that a manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.

336 So. 2d at 92.

Thus, "[b]y adopting Section 402A, the court implicitly recognized that as a matter of public policy, rather than of contractual understanding, a duty should be placed on manufacturers to 'warrant' the safety of their products." *Fla. Steel Corp. v. Whiting Corp.*, 677 F. Supp. 1140, 1144 (M.D. Fla. 1988); *see also West*, 336 So. 2d at 88–89 (citing *Caruth v. Mariani*, 463 P.2d 83 (Ariz. Ct. App. 1970), for the proposition that "[s]trict tort liability is based on public policy," and holding "[t]he public policy which protects the user and the consumer of a manufactured article should also protect the innocent bystander"); *Porter v. Rosenberg*, 650 So. 2d 79, 81 (Fla. 4th DCA 1995) ("The fundamental purpose underlying the doctrine of strict products liability is to further public safety in the use of consumer goods, by imposing liability without fault upon entities that have the ability to adequately compensate the injured party, distribute the risk of loss, and deter further production of defective products."). Moreover, while the *West* decision dealt with the issue of a *manufacturer's* liability, "[s]ince *West*, Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors." *Samuel Friedland Fam. Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994). The *West* decision and its progeny therefore reflect a clear public policy to protect consumers from injuries caused by unreasonably dangerous products placed on the market by manufacturers and retailers.

No Florida decision directly addresses the issue of whether an exculpatory clause between a retailer and a consumer purporting to insulate the retailer from strict liability in tort for personal injuries contravenes public policy. However, the holding in *Loewe v. Seagate Homes, Inc.*, 987 So. 2d 758 (Fla. 5th DCA 2008), which considered whether an exculpatory clause that purported to release a contractor from

6

liability for failure to comply with building codes was against public policy, is instructive.

The plaintiffs in *Loewe* entered into a purchase agreement with the defendant for the construction and purchase of a new house. *Id.* at 759. The agreement contained an exculpatory clause purporting to release the defendant from liability for any personal injury caused by the defendant's construction practices, regardless of whether the injury resulted from the defendant's negligence, gross negligence, or intentional conduct. *Id.* at 760. Less than a week after the plaintiffs moved into the house, a door allegedly fell off its track and struck one of the plaintiffs in the eye, causing injuries. *Id.* at 759. The plaintiffs thereafter filed a negligence action against the defendant. *Id.* The trial court ultimately dismissed the action on the basis that the plaintiffs' claim was barred by the exculpatory clause. *Id.* at 759–60. On appeal, the Fifth District held "the exculpatory clause is obviously unenforceable to the extent that it attempts to release [the defendant] of liability for an intentional tort." *Id.* at 760. The court also held the exculpatory clause contravened public policy to the extent it attempted to contract away the defendant's responsibility to comply with building codes, noting the "complaint was dismissed prior to a determination of whether [the defendant's] alleged negligence also constituted a building code violation." *Id.* ("[A] party may not contract away its responsibility to comply with a building code when the person with whom the contract is made is one of those whom the code is designed to protect."). In explaining its decision, the court noted that "Florida's comprehensive regulation of the licensing of building contractors and building construction standards reflect a clear public policy to protect purchasers of residential homes from personal injuries caused by improper construction practices." *Id.* (footnotes omitted). Therefore, "[t]o permit builders of residential homes to absolve themselves from liability for personal injury caused by their negligent acts would undermine the Legislature's intent to protect the public from unsafe construction practices." *Id.* at 761.

Here, much like the public policy behind Florida's regulation of the licensing of building contractors and building construction standards, the public policy behind adopting the theory of strict liability is rooted in the idea of protecting the safety of consumers. It follows logically, then, that an exculpatory clause purporting to absolve a retailer of liability from strict liability in tort for injuries caused by defects in products it places on the market likewise violates public policy. *See Fla. Steel Corp.*, 677 F. Supp. at 1144 ("Although Florida courts have not spoken on the subject, this Court finds that the state's highest court would refuse to enforce contractual disclaimers in strict tort liability actions—regardless of the

parties' relative bargaining power."); *see also* Restatement (Second) of Contracts § 195, cmt. c. (referencing Restatement (Second) of Torts § 402A, and stating: "In general, a term exempting the seller from this liability is unenforceable on grounds of public policy.").

Other jurisdictions' decisions support this conclusion. *See Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 727–28 (Colo. 2010) ("It is enough here that an agreement releasing a manufacturer from strict products liability for personal injury, in exchange for nothing more than an individual consumer's right to have or use the product, necessarily violates the public policy of this jurisdiction and is void."); *Chi. Steel Rule & Die Fabricators Co. v. ADT Sec. Sys., Inc.*, 763 N.E.2d 839, 842 (Ill. App. Ct. 2002) ("Illinois courts have held that contractual provisions precluding consumers from bringing strict liability claims for personal injuries violate public policy."); *Westyle v. Look Sports, Inc.*, 22 Cal. Rptr. 2d 781, 800 (Cal. Ct. App. 1993) ("We conclude that, as a matter of public policy, product suppliers cannot insulate themselves from strict liability in tort for injuries caused by defects in products they place on the market by obtaining a consumer's signature on an express assumption of risk."); *see also McGraw-Edison Co. v. Ne. Rural Elec. Membership Corp.*, 678 N.E.2d 1120, 1125 (Ind. 1997) (disclaimer of strict liability held invalid under Indiana products liability statute); *Elite Pros., Inc. v. Carrier Corp.*, 827 P.2d 1195, 1200–01 (Kan. Ct. App. 1992) (noting that Kansas has adopted the doctrine of strict liability as set out in the Restatement (Second) of Torts § 402A, and concluding "there is no basis for a determination that as a matter of law the printed warranty and disclaimer operates to preclude recovery . . . on the theory of strict liability in tort"). *But see Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146, 149 (3d Cir. 1974) ("We conclude . . . that Pennsylvania law does permit a freely negotiated and clearly expressed waiver of § 402A between business entities of relatively equal bargaining strength."); *McDermott, Inc. v. Clyde Iron*, 979 F.2d 1068, 1076 (5th Cir. 1992) (applying New York law and concluding strict liability can be waived between two sophisticated commercial entities), *reversed in part on other grounds by McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).

Defendant nonetheless seemingly suggests that because Plaintiff still has the option of suing Suzuki, the motorcycle's manufacturer, the exculpatory clause does not violate public policy. This argument is unavailing. As explained by the Florida Supreme Court, "[t]he underlying basis for the doctrine of strict liability is that those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.'" *Amoroso,* 630 So. 2d at 1068 (alteration in original) (quoting *N. Mia. Gen.*

*Hosp., Inc. v. Goldberg,* 520 So. 2d 650, 651 (Fla. 3d DCA 1988)).  As the retailer Defendant is within the subject motorcycle's distributive chain, it cannot insulate itself from strict liability in tort merely because Plaintiff has other potential remedies available.

For the foregoing reasons, we reverse the portion of the order dismissing the three strict products liability counts and remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

GROSS and FORST, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***